**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-20633-Civ-SCOLA/TORRES

JOSE CASAUDOUMECQ,

        Plaintiff,

v.

NATIONAL SPECIALTY
INSURANCE COMPANY,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON PLAINTIFF'S RENEWED MOTION TO DETERMINE LIEN RIGHTS**

This matter is before the Court on Jose Casaudoumecq's ("Plaintiff") motion to determine his former law firm's lien rights.  [D.E. 27].  No response was filed in opposition to Plaintiff's motion and the time to do so has now passed.[1]  Therefore, Plaintiff's motion is now ripe for disposition.  Upon review of the motion, which is unopposed and may be granted by default under S.D. Fla. Local R. 7.1, Plaintiff's motion should be **GRANTED**.[2]

---

[1]    Plaintiff's former law firm, Font & Nelson ("Font Nelson"), filed a motion to strike [D.E. 31] Plaintiff's motion but the Court denied that motion on May 5, 2020 [D.E. 33] because it did not contain a proper pre-filing conference certification as required under the Court's Local Rules.  Other than Font Nelson's motion to strike, there was no other response filed indicating an opposition to Plaintiff's motion and National Specialty Insurance Company ("Defendant") consents to the relief sought.

[2]    On May 8, 2020, the Honorable Robert N. Scola referred Plaintiff's motion to the undersigned Magistrate Judge for disposition.  [D.E. 34].

## I.     BACKGROUND

Plaintiff, through his former counsel Font Nelson, filed a lawsuit on February 12, 2018 against Defendant in the Eleventh Judicial Circuit in and for Miami-Dade County because of a property damage loss due to Hurricane Irma.  The state court entered summary judgment in Defendant's favor for Plaintiff's failure to satisfy certain conditions prior to bringing the claims asserted in that case.  Prior to the court entering summary judgment, the parties had attempted to settle the dispute, but it failed when Font Nelson sought excessive fees.  Plaintiff also alleges that, at the summary judgment hearing, the state court instructed Font Nelson to inform Plaintiff of a pending settlement offer but Font Nelson failed to do so and the settlement failed.

Plaintiff then claims that Font Nelson failed to inform him that summary judgment was granted in Defendant's favor.  Instead, Plaintiff alleges that Font Nelson, without his knowledge, filed a second lawsuit on October 11, 2019 in Florida state court.  Defendant filed a counterclaim in that action for a repeated failure to satisfy certain conditions.  Afterwards, Plaintiff contends that Font Nelson failed to inform him of the second lawsuit and that he only became aware of it when he asked another lawyer (i.e. his current counsel) to check the status of the first case because Font Nelson failed to communicate with him for several months.

At this time, Defendant presented an offer of judgment and, as expected, Font Nelson did not inform of this either.  When Plaintiff learned of the pending settlement proposal, he requested, through his new lawyer a copy of the proposal

and Font Nelson's fee records to determine whether he could accept the offer.[3]  Font Nelson then refused to provide any fee records so Plaintiff could not properly evaluate the settlement offer.

Subsequently, Defendant removed the case to federal court pursuant to the Court's diversity jurisdiction on February 12, 2020.[4]  [D.E. 1].  Plaintiff alleges that Font Nelson, as it has done before, failed to inform him of this development. Plaintiff only discovered that the case was in federal court when Defendant's counsel advised Plaintiff of the removal on March 2, 2020.  Defendant then made a settlement offer that would have resolved the indemnity portion of Plaintiff's claim and left the entitlement and amount of fees and costs owed to Font Nelson to be resolved by this Court (and payable by Defendant).  The terms were agreeable to Plaintiff, who instructed Font Nelson on March 5, 2020 to accept the offer so long as the Court would determine the fees and costs.

However, in an email dated March 5, 2020, Font Nelson abruptly terminated its representation as Plaintiff's counsel and asserted a right to a charging lien in lieu of accepting Defendant's offer.  Plaintiff claims that, in the email terminating the representation, Font Nelson took the position that there were irreconcilable differences.   But, Plaintiff states that this is misleading because the only irreconcilable difference between him and Font Nelson was that the latter did not

---

[3]     The offer of judgment was inclusive of fees.

[4]     Plaintiff is a resident of Florida and Defendant is a Texas corporation with its principal place of business in Texas.

3

want this Court to determine its entitlement to fees if it followed Plaintiff's instructions to accept Defendant's settlement offer.

Making matters worse, Plaintiff alleges that, after Font Nelson terminated its representation, the firm filed an unauthorized motion to remand this case to state court without Plaintiff's knowledge or consent. [D.E. 13]. Plaintiff suspects that Font Nelson's motion was an attempt to have a state court determine its lien rights. On March 17, 2020, Plaintiff submitted a *pro se* letter informing the Court that Font Nelson had terminated its representation. The Court then issued an Order to Show Cause [D.E. 16] and based on Font Nelson's response [D.E. 18], the Court granted Font Nelson's request to withdraw as counsel on March 23, 2020. [D.E. 20]. Plaintiff then filed a motion on April 20, 2020 [D.E. 27] to determine Font Nelson's lien rights.

## II.   ANALYSIS

Plaintiff's motion seeks a determination of Font Nelson's lien rights. Plaintiff argues that Font Nelson should not be allowed to recovery anything because the firm voluntarily withdrew as counsel and the underlying retainer agreement effectively prohibits it. Plaintiff also contends that Font Nelson does not have any lien rights because it acted, on numerous occasions, without his consent and contrary to his own interests, including a failure to settle this case. Plaintiff maintains that any award to Font Nelson would therefore be unjust given the numerous ethical violations that the law firm has committed. If the Court

4

disagrees, Plaintiff requests a reasonable schedule for discovery, briefing, and an evidentiary hearing to determine the extent of Font Nelson's lien rights.[5]

### A.  <u>*Whether the Court Has Jurisdiction to Determine the Lien*</u>

Before we consider Plaintiff's motion on the merits, we must consider a preliminary question of whether the Court has jurisdiction to determine Font Nelson's lien rights.  Federal courts are courts of limited jurisdiction.  We possess only the power strictly authorized by the Constitution and statute.  *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).  The court's jurisdiction cannot be expanded merely through judicial decree.  *Id.* (citations omitted).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (internal citations omitted).

The contractual dispute between Plaintiff and Font Nelson is governed under Florida state law.  The dispute gives rise to no claims arising under federal law and both are residents of Florida; thus, diversity of jurisdiction is lacking.  As such, the dispute between Plaintiff and Font Nelson would ordinarily be beyond the limited jurisdiction that this federal court would have.  Florida state court, which has general jurisdiction over these parties and claims, would be the appropriate forum to litigate such a dispute.

There are narrow exceptions, however, to this general rule.  One such exception, the doctrine of ancillary jurisdiction – that has been codified in part

---

[5]     The parties' condition settlement is subject to, as a condition precedent, a determination of Font Nelson's lien rights and any amounts owed.

through federal statute, 28 U.S.C. § 1367 – "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* at 378.   Justice Scalia's opinion for the Court in *Kokkonen* described ancillary jurisdiction as a way "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80.   The Court, however, emphasized that the doctrine's limits are quite narrow.   "[N]o controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Id.* (quoting *Fulton Nat'l Bank of Atlanta v. Hozier,* 267 U.S. 276, 280 (1925)).

As other cases have described it, ancillary jurisdiction "rests on the premise that a federal court acquires jurisdiction of a case or controversy in its entirety," *Jenkins v. Weinshienk,* 670 F.2d 915, 918 (10th Cir. 1982), and "may extend to claims having a factual and logical dependence on 'the primary lawsuit.'" *Peacock v. Thomas,* 516 U.S. 349, 355 (1996) (citations omitted).   "The basis of the doctrine of ancillary jurisdiction is the practical need 'to protect legal rights or effectively to resolve an entire, logically entwined lawsuit.'" *Id.* (quoting *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 377 (1978)).

Ancillary jurisdiction is thus not a permissive doctrine; rather, it represents the "constitutional limits of federal judicial power." *Owen Equip.,* 437 U.S. at 371.   Although a district court's exercise of ancillary jurisdiction is discretionary,

the court must be cautious in its willingness to expand its jurisdiction. *See, e.g., Foster v. Bd. of Trs. of Butler County Comm. Coll.,* 771 F. Supp. 1118, 1120 (D. Kan. 1991).

One well recognized application of this narrow doctrine is the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit. *See, e.g., Gottlieb v. GC Financial Corp.,* 97 F. Supp. 2d 1310 (S.D. Fla. 1999) and *Zaklama v. Mount Sinai Medical Center,* 906 F.2d 650 (11th Cir. 1990) (both adjudicating post-judgment attorneys' fees disputes under Florida law charging liens); *see also Rivera–Domenech v. Calvesbert Law Offices PSC,* 402 F.3d 246, 250 (1st Cir. 2005) ("Courts have rested the exercise of jurisdiction over [attorney-client] fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction."); *Garcia v. Teitler,* 443 F.3d 202, 207–09 (2nd Cir. 2006) (federal courts have ancillary jurisdiction to address attorney fee disputes in ongoing criminal cases); *Garrick v. Weaver,* 888 F.2d 687, 690 (10th Cir. 1989) (quoting *Jenkins,* 670 F.2d at 918: "It is well established that '[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.'"); *Foster,* 771 F. Supp. at 1120 ("Courts have exercised ancillary jurisdiction over disputes between attorneys and clients over the proper amount of attorneys' fees due to the attorneys for work performed in the underlying litigation.").

7

In the context of attorney fee disputes, the exercise of ancillary jurisdiction is particularly appropriate because courts have inherent jurisdiction to supervise the bar and to insure compliance with the reasonableness standard set forth in the attorneys' rules of ethics and professional responsibility.  *See e.g., Garcia,* 443 F.3d at 207; *Rosquist v. Soo Line R.R.,* 692 F.2d 1107, 1111 (7th Cir. 1982); *In re Michaelson,* 511 F.2d 882, 888 (9th Cir. 1975); *Broughten v. Voss,* 634 F.2d 880 (5th Cir. 1981) ("The basis for exercise of this ancillary jurisdiction is the responsibility of the court to protect its officers . . . and the power of the court 'to do full and complete justice.'") (internal citations omitted); *cf. Hyde v. Irish,* No. 15-13010, ___ F.3d ___ (11th Cir. June 17, 2020) (court lacking subject matter jurisdiction over underlying case may still adjudicate motion for sanctions "to deter those who might have violated the rules" and "ensure the maintenance of orderly procedure").

The supplemental jurisdiction statute, as amended and codified at 28 U.S.C. § 1367, incorporated these concepts of ancillary jurisdiction (plus the related concept of "pendent" jurisdiction) into "supplemental" jurisdiction: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"

To determine whether ancillary jurisdiction exists, district courts consider four main factors: (1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceedings,

8

or as an integral part of the main proceeding, (2) the federal court should be able to determine the matter without a substantial new fact-finding proceeding, (3) failing to determine the matter should not deprive a party of any important procedural or substantive right, and (4) the matter should be decided if necessary to protect the integrity of the principal proceeding or insure that its disposition is not frustrated. *See Jenkins,* 670 F.2d at 918.

Here, Plaintiff has met each of the four factors identified above. The first factor is met because, unlike other cases, Font Nelson actually appeared as counsel in this case, filed motions without Plaintiff's consent, ignored Defendant's settlement offer, and terminated its representation when Plaintiff learned of the firm's actions. *See, e.g.*, *Bruton v. Carnival Corp.*, 916 F. Supp. 2d 1262, 1266 (S.D. Fla. 2012) (finding that the first factor was not met because the attorney "never appeared as counsel of record in this case."). The fee dispute is also integral these proceedings because there is now a conditional settlement between the parties that is contingent on the resolution of Font Nelson's lien rights. Therefore, the fee dispute between Font Nelson and Plaintiff is directly tied to the disposition of this action.

The second factor is also met because there is no argument that there is a need for additional fact finding to resolve the motion presented. Font Nelson did not file an opposition with respect to its lien rights and Plaintiff attached the underlying retainer agreement for the Court's review. Therefore, given the

9

unrebutted allegations as to how Font Nelson conducted itself in these proceedings, there is no need for additional fact-finding.

The third factor is met because there is no evidence that any party will be deprived of any procedural or substantive rights.  To be sure, Font Nelson appeared in this action, remained on the docket's service list, and had an opportunity to respond to Plaintiff's motion.  Font Nelson did, in fact, file a motion to strike but the Court denied that motion on May 5, 2020 because Font Nelson failed to include a proper pre-filing certification.  [D.E. 33].  After the Court denied that motion, Font Nelson never attempted to file any other response and the time to do so has long since passed.  As such, there is no evidence that Font Nelson was deprived of any procedural or substantive rights as it had every opportunity to file a response but failed to do so.

Finally, as to the fourth factor, Font Nelson's lien rights, if any, should be decided at this juncture because, as mentioned above, the parties have agreed to settle this case on the condition that the fee dispute between Plaintiff and his former counsel is resolved.  If the Court delayed the disposition of the fee dispute to a later date, this action would continue unnecessarily and the disposition would be frustrated because a conditional settlement has already been reached and the parties are prepared to close this case.  For these reasons, we have jurisdiction to consider Plaintiff's motion and the only question remaining is the extent of Font Nelson's lien rights.

**B.**      *Whether Font Nelson Has Any Lien Rights*

Plaintiff argues that Font Nelson has no lien rights because Plaintiff specifically instructed his former counsel to accept Defendant's settlement offer. [D.E. 27-3]. However, Font Nelson did not comply with Plaintiff's directives and instead terminated its representation. Plaintiff contends that Font Nelson's actions constitute a voluntarily withdrawal and that Font Nelson should have no lien rights as a result of its actions.

To determine the extent of Font Nelson's lien rights, we must consider the Florida Supreme Court's landmark decision in *Faro v. Romani*, 641 So. 2d 69, 70 (Fla. 1994). There, the issue was whether "an attorney who voluntarily withdraws in a contingent fee case before the happening of the contingency is entitled to a fee." *Id*. at 70. The Florida Supreme Court considered its prior decision in *The Florida Bar v. Hollander*, 607 So. 2d 412 (Fla. 1992), in which it held that "any contingency fee contract which permits the attorney to withdraw from representation without fault on the part of the client or other just reason, and purports to allow the attorney to collect a fee for services already rendered would be unenforceable and unethical." *Id*. at 71 (quoting *Hollander*, 607 So. 2d at 415). The Court clarified in *Faro* "that when an attorney withdraws from representation upon his own volition and the contingency has not occurred, the attorney forfeits all rights to compensation." *Id*. The Court carved out two limited exceptions to this rule in that "if the client's conduct makes the attorney's continued performance of the contract either legally impossible or would cause the attorney to violate an

11

ethical rule of the Rules Regulating The Florida Bar, that attorney may be entitled to a fee when the contingency of an award occurs." *Id*.

There is nothing in this record that either of the two *Faro* exceptions apply when Font Nelson voluntarily withdrew as counsel. The record does not support, for example, a finding that made Font Nelson's representation legally impossible. In fact, it shows the exact opposite. It shows that Plaintiff wanted to settle this case but that Font Nelson ignored those instructions. [D.E. 27-3]. If Font Nelson had filed a response to Plaintiff's motion, it have may have asserted that there was some sort of breakdown in the attorney-client relationship that necessitated its withdrawal from this case. But, even that contention has been rejected as Florida appellate courts have reaffirmed that there are only two limited exceptions to the holding in *Faro*. *See, e.g., DePena v. Cruz*, 884 So. 2d 1062, 1064 (Fla. 2nd DCA 2004) (rejecting the argument that a breakdown in the attorney-client relationship qualifies as an exception to the rule in *Faro* because "the two enumerated exceptions in *Faro* are the only circumstances that justify a finding that the attorney was entitled to the fee.") (citing cases). And "subsequent cases have steadfastly emphasized that the withdrawing attorney forfeits all rights to compensation unless the attorney can show that *the client's conduct* made the withdrawal necessary." *Santini v. Cleveland Clinic Fla.*, 65 So. 3d 22, 30 (Fla. 4th DCA 2011) (emphasis in original) (citing *DePena*, 884 So. 2d at 1063-64; *Carbonic Consultants, Inc. v. Herzfeld & Rubin, Inc.,* 699 So. 2d 321, 324 (Fla. 3rd DCA

12

1997); *Kocha & Jones, P.A. v. Greenwald,* 660 So. 2d 1074, 1075 (Fla. 4th DCA 1995)).

The record also has no evidence that Plaintiff's conduct placed Font Nelson in a position to violate the law or an ethical rule. There is no evidence, for example, that Plaintiff breached the retainer agreement, refused to pay any costs or fees as required, or that Font Nelson was in danger of violating any other ethical obligation.[6] The only evidence shows that Font Nelson voluntarily withdrew from this case and, as a result, cut off its own lien rights as Plaintiff's former counsel. As in *Faro,* "the record in this case cannot support a finding that [Plaintiff] breached the attorney contract or legally caused it to be breached. Nor does it support a finding that [Plaintiff's] conduct placed [Font Nelson] in an ethical dilemma. [Font Nelson] abandoned [its] right to any compensation when [it] withdrew from [the]

---

[6]    The retainer agreement contains the following language with respect to a contingency fee:

> ATTORNEY FEES — CONTINGENCY FEE BASIS: Client acknowledges that Attorney has accepted this case on a contingent basis in the expectation that Attorney's fees will be paid by Client's opponents by settlement or court award pursuant to Florida Statutes. Such an award of Attorney's fees, by settlement or court award, is an integral part of the fee agreement. Any attorney fees earned by Font & Nelson, PLLC, will not be paid out of any money Client recovers for Client's damages but will instead be paid separately by Client's opponent either by settlement or court award. Client agrees that any attorney fees recovered from Client's opponents shall belong to Attorney and may be paid directly to them, without the requirement that the client be included on any such check. Client hereby waives and assigns any and all interest in the attorney's fees and costs payment to Font & Nelson, PLLC. *No recovery, no fee.*

[D.E. 27-4 at 1] (emphasis in original)

13

contingent fee contract, and thus [Font Nelson is] not entitled to recover a fee." *Faro*, 641 So. 2d at 71.  Accordingly, Plaintiff's motion should be **GRANTED**.[7]

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion should be **GRANTED** and Font Nelson should have no equitable lien rights due to its voluntary withdrawal as counsel in this case.  [D.E. 27].  As such, the parties in this action should proceed to execute their settlement and timely file a stipulated dismissal.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 3rd day of June, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[7]    Plaintiff presented alternative arguments in support of its motion, but we need not consider them given that Font Nelson has no lien rights for the reasons already stated.